NOTICE

Decision filed 03/04/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231167

NO. 5-23-1167

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1422 |
| | ) | |
| TRAVIS BURKE, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court, with opinion. Justices Barberis and Boie concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant timely appealed the trial court's order denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On February 7, 2024, this court issued a summary order dismissing the appeal. *People v. Burke*, No. 5-23-1167 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

---

[1]The press and politicians have also sometimes referred to the Act as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act.

1

¶ 2    On February 13, 2024, defendant filed a petition for rehearing pursuant to Illinois Supreme Court Rule 367 (eff. Nov. 1, 2017). Therein, defendant argues that this court should vacate our previous dismissal based on supervisory orders that were issued in other cases. We now grant defendant's petition for rehearing and modify our decision. For the reasons set forth below, we dismiss defendant's appeal.

¶ 3                                      I. BACKGROUND

¶ 4    On November 13, 2023, defendant was charged, by information, with four offenses: (1) aggravated driving under the influence of alcohol, a Class 4 felony, in violation of section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2022)); (2) aggravated battery, a Class 3 felony, in violation of section 12-3.05(c) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(c) (West 2022)), related to an incident with Rachel Weckel; (3) aggravated battery, an extended term eligible Class 2 felony, in violation of section 12-3.05(d)(4)(i) (*id.* § 12-3.05(d)(4)(i)), involving Deputy Griffin; and (4) violation of an order of protection with a prior domestic battery, an extended term eligible Class 4 felony, in violation of section 12-3.4(a) and (d) (*id.* § 12-3.4(a), (d)). The charges stemmed from an incident on November 8, 2023.

¶ 5    On November 13, 2023, the State filed a verified petition requesting defendant's detention. Trial counsel was appointed for defendant. The court issued a temporary detention order and set the matter for hearing on November 14, 2023. A pretrial investigation report revealed that defendant was 34 years old, lived in Rantoul, Illinois, for the last 10 years with his mother, and was a lifelong resident of Champaign County, Illinois. He had two children. He advised that he had reliable transportation to and from court by his mother. He was unemployed due to a car accident in May 2023, in which 12 bones were broken and a blood clot formed. He was scheduled for a cardiology appointment on November 17, 2023. He stated he needed to be released because

he needed open-heart surgery and physical therapy. He reported that he was currently on the waiting list for treatment at Rosecrance and took medication for anxiety. He was under active conditional discharge related to Champaign County case No. 22-MT-1267 and on active probation in Champaign County case No. 22-DV-63. His Virginia Pretrial Risk Assessment Instrument-Revised score was 8, which placed him at a level 4 of 6 on the risk scale. Defendant's criminal history included 14 previous convictions, ranging from Class A misdemeanors to a Class X felony.

¶ 6    At the detention hearing, the State proffered that defendant had an older case, No. 23-CF-1006, involving a vehicle stolen on March 10, 2022, when the owner left the vehicle running to warm up. The vehicle was later located on March 14, 2022, in Homer, Illinois, with damage, including a missing bumper. On March 16, 2022, defendant's girlfriend called police and reported defendant had taken parts from the vehicle and placed them in her father's shed. Officers contacted the owner of the shed, who reported finding a bumper. Officers connected the bumper to the stolen vehicle. On June 27, 2022, defendant's DNA was found on the vehicle's steering wheel. The officers contacted the car owner who stated she did not know defendant and never gave permission to defendant, or anyone else, to drive her vehicle. The State proffered that defendant was on pretrial release in that case when an order of protection was issued to Mercadeez Meade, against defendant, on April 21, 2023.

¶ 7    Thereafter, on November 8, 2023, the Champaign County Sheriff's Office responded to a domestic incident occurring at a Casey's gas station. When officers arrived, Ms. Meade was still at the location and advised the officers that she arrived at Casey's with defendant, but they started arguing over driving the car. She stated that defendant was physical with her in the past. She further indicated that defendant had taken prescription pain medicine and drank alcohol. She expressed

3

concern that she would be arrested because she knew about the prior order of protection and allowed contact.

¶ 8    The officers spoke with a customer at Casey's who stated that she saw the two arguing and approached them to try to calm them down. The customer stated defendant spit on her. She also stated that another female arrived on the scene, appeared to take something from defendant, and left the scene. The customer took a photograph of the vehicle that was later identified as being owned by defendant's mother.

¶ 9    While those officers were speaking with Ms. Meade and the customer, other officers saw defendant running from the Casey's parking lot when they arrived. Defendant was apprehended. While deputies attempted to handcuff defendant, he struggled with the officers, swung around, wrapped his arms around Deputy Griffin, and threw him to the ground, causing injury to Deputy Griffin's head. Defendant was extremely intoxicated, and officers had to use tasers to gain control of him. When defendant was placed in the back of the officer's car, he began hitting his head against the door and saying that he "should have killed" Ms. Meade. He also made comments about killing himself. Defendant claimed he was having heart problems, so officers accompanied defendant to the hospital in an ambulance. While being transported by ambulance, defendant pulled out his penis and began masturbating in front of the staff. Defendant was released from the hospital on November 10, 2023. When officers arrived to pick up defendant, he had already left and was later located at Kentucky Fried Chicken where he was arrested and transported to jail.

¶ 10    The State expressed concerns with defendant's prior convictions as well as his pending charges that included criminal trespass to residence, domestic violence, a new driving under the influence, and charges for lewd conduct. The State also expressed concern regarding defendant's statements, violation of the order of protection, and stated intent to kill the subject of the order of

4

protection. The State argued that defendant was a direct danger to the subject of the order of protection, and defendant's detention was necessary to protect her and was appropriate given his willingness to violate the prior order of protection and commit new offenses while on pretrial release in another case.

¶ 11    Defense counsel proffered a copy of defendant's scheduled medical appointment addressed in the November 10, 2023, pretrial services investigation report. Counsel stated that defendant's actions were partially related to the prior vehicle accident and that it was likely defendant currently had a blood clot based on his coughing and pain in his lungs when he coughed. Counsel proffered that defendant was on a waiting list for inpatient treatment at Rosecrance and was involved in outpatient treatment in the interim. Counsel further proffered that defendant was scheduled to start domestic violence classes that week.

¶ 12    The State argued that defendant's appointment was not an emergency based on the length of time between when the appointment was requested and when it was scheduled. It argued that appointments could be rescheduled. The State then argued defendant's "significant criminal history going back to 2006" that included prior convictions for resisting officer offenses, a Class X felony home invasion charge, domestic battery, orders of protection, and possession of a stolen vehicle. The State further argued that the current behavior was not previously deterred by sentences following conviction—some of which involved the same offenses seen here. The State then addressed the timeline of recent events, stating defendant established a record that he was a concern and a danger. The State argued that the court should take steps to prevent defendant acting on his threats and further recurrence.

¶ 13    Defense counsel argued that defendant's medical issues were severe and specialty appointments for echocardiograms were scheduled based on availability. He further argued that

defendant could have a life-threatening blood clot, so defendant needed to keep the scheduled appointment. Counsel further argued that defendant's contact with Ms. Meade was consensual and voluntary. He further argued that defendant was trying to address the other issues through his involvement with Rosecrance and therefore detention was unnecessary.

¶ 14 Following argument, the court found the State presented clear and convincing evidence that the proof was evident or presumption great that defendant committed a detainable offense. The court noted that the voluntary consent of the victim might somehow mitigate the violation of the order of protection offense but found it was "nonetheless a violation of an order of protection" and that offense was detainable based on dangerousness. The court noted that the victim needed protection but so did the community based on the other offenses. The court also noted defendant's need for medical treatment and his significant medical problems, which could be life-threatening, and that defendant was taking steps to address his issues. The court stated:

"Nonetheless, it can't be overlooked that he was on pretrial release in this 1006 case [the car theft], but also he's on conditional discharge at the time of that offense in Champaign County for a different case. He's also on probation at the time of these events. And that probation was for the offense of domestic battery.

Now let's look at what the State's evidence is about November 8. There's a valid order of protection that says no contact with Ms. Meade. He's having contact with Ms. Meade. It's been presented that Ms. Meade plays a role in that and that's mitigating. But look at which it really is. Ms. Meade is with Mr. Burke at a time when he's been consuming alcohol. The officers who encounter him a little bit later would say he's extremely intoxicated. She knows that he's been drinking alcohol, and he been taking drugs as well—prescription drugs is her understanding. He's been physical with her in the past. She's

6

worried about herself being in trouble. That in this court's opinion based on the facts presented here is not a mitigation at all. It is a person who is the subject of repeated acts of physicality in this abusive relationship that she's trying to get help with. And she's in this trap that a domestic violence victim can view that relationship where despite all of these extreme red flags, she's worried about herself being in trouble for her own conduct because she's blaming herself. That is a domestic violence victim acting in the way that a domestic violence victim may be expected to. It is not a person who is showing this full control over her life and the role Mr. Burke plays in her life and what he brings to her life in any given moment at all. She is a victim who needs protection. That's exactly what the law is set up to do ***.

The State has shown by clear and convincing evidence that there is no combination of conditions that can mitigate the real and present threat that Mr. Burke poses to her safety and the safety of the community."

Thereafter, the court granted the State's petition to deny release and advised defendant of his appeal rights.

¶ 15 The trial court's detention order found that defendant posed a real and present threat and/or posed a high likelihood of willful flight and no condition, or combination of conditions, could mitigate the dangerousness or potential flight. In support, the order contained the following:

"Mr. Burke was on probation for the Domestic Battery at the time of this offense, as well as conditional discharge in another case, and pretrial release in two other cases. This offense occurred at a gas station and the victim said she argued with Mr. Burke, he had been physical with her in the past, and she knew he had been drinking alcohol and taking prescription medication, but still she was worried that SHE would get in trouble because

7

of the Order of Protection. A witness tried to intervene[,] and Mr. Burke spit on the person. Police arrived and Mr. Burke ran. When they caught up to him, he was extremely intoxicated[,] and he fought with and injured the officers. He said he should have killed the victim, and discussed killing himself. He has serious health issues and needs testing to determine how serious, and he recognizes his substance abuse issues and is pursuing treatment, including on an inpatient basis, but he has four prior prison sentences, and his prior convictions include Domestic Battery, Unlawful Restraint, and Home Invasion. Community-based sentences and conditions of release do not work. He poses a real and present threat to the safety of the victim and the community that no conditions of release can mitigate."

Defendant timely appealed.

¶ 16                                II. ANALYSIS

¶ 17    Pretrial release—including the conditions related thereto—is governed by the Act. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 18    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may

8

consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 19    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 20    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*,

9

2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 21 Defendant's notice of appeal listed the requested relief as a reversal of the trial court's order denying pretrial release. The notice provided the grounds for the appeal by checking four issues in the notice of appeal, including (1) whether the State met its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the charged offense; (2) whether the State met its burden of proving defendant posed a real and present threat to the safety of any person(s) or the community based on the specific, articulable facts of this case; (3) whether the State met its burden of proving no condition or combination of conditions could mitigate the real and present threat to the safety of any person(s) or the community or of defendant's willful flight; and (4) whether the court erred in determining that no condition, or combination of conditions, would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor. Despite the form containing eight lines

to allow defendant to elaborate and present argument on each issue checked, no argument or citation to authority was provided.

¶ 22    On November 21, 2023, the trial court appointed the Office of the State Appellate Defender (OSAD) to represent defendant in this appeal and further ordered the court reporter to file the record on appeal. On November 22, 2023, this court acknowledged defendant's appeal and sent correspondence to OSAD, providing the timeline for the submission of the record on appeal and the submission of an Illinois Supreme Court Rule 604(h)(2) (eff. Oct. 19, 2023) legal memorandum. OSAD entered its appearance on behalf of defendant on December 5, 2023.

¶ 23    On December 6, 2023, the State moved to dismiss the appeal. Relying on *People v. Inman*, 2023 IL App (4th) 230864, the State argued that defendant's notice of appeal failed to provide the requisite information pursuant to Rule 604(h)(2). The State argued defendant should not be allowed to correct the deficiency by filing a memorandum and the appeal should be dismissed.

¶ 24    On December 7, 2023, OSAD filed a response arguing that defendant's failure to elaborate on the lines provided in his notice of appeal did not render the notice of appeal facially deficient. OSAD further argued that *Inman* did not provide authority for dismissing defendant's appeal. The response stated that *Inman* was distinguishable because defendant's memorandum was not due until December 20, 2023, and asserted that even if no memorandum was filed, "[p]roviding appellate review of the merits, based on the arguments made at the hearing, is an uncomplicated endeavor." OSAD argued that this court was required to review the record and it could ascertain why defendant should not be detained "in mere minutes by reading the transcript, an obligation that is already part of an appellate court's duties." OSAD concluded by classifying the State's motion to dismiss as "nothing more than a thinly veiled attempt to subvert Supreme Court Rule

11

604(h) and the fair administration of justice" and should be denied. A second, nearly identical response was filed by OSAD on December 12, 2023.

¶ 25    On January 29, 2024, the State filed a Rule 604(h)(2) memorandum requesting affirmation of the trial court's order denying pretrial release. On February 2, 2024, OSAD filed a notice with this court. The notice stated that defendant's notice of appeal was timely filed, this court had jurisdiction, and that "[u]pon review of the record on appeal, Defendant-Appellant will not file a Rule 604(h) memorandum."

¶ 26    This is not the first instance wherein this court, as well as the other appellate districts, has grappled with a lack of argument presented on appeal in pretrial release cases. See *People v. Duckworth*, 2024 IL App (5th) 230911, ¶¶ 7-8; *Inman*, 2023 IL App (4th) 230864, ¶¶ 12-13; *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 37-42; *People v. Cook*, 2023 IL App (2d) 230424-U, ¶¶ 9-10. Here, while defendant requested relief, *i.e.*, a reversal of the court's order of detention, and provided the grounds for his requested relief as evidenced by the checked boxes listing the issues raised on appeal, no legal argument, fact, or citation to authority was provided in support of the grounds for the relief requested.

¶ 27    It is well established that

" '[i]n our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. *** [A]s a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." [Citation.]' " *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)).

12

Our supreme court has directed the appellate courts to refrain from raising unbriefed issues when doing so " 'would have the effect of transforming this court's role from that of jurist to advocate.' " *Id.* at 324 (quoting *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002)). In such instances where this court " 'would be forced to speculate as to the arguments that the parties might have presented,' " we must " 'refrain from addressing these issues *sua sponte*' " because engaging in " 'such speculation would only cause further injustice.' " *Id.* (quoting *Rodriguez*, 336 Ill. App. 3d at 14).

¶ 28    While we are equally cognizant of the Illinois Supreme Court's allowance of an appellate court to ignore briefs that fail to comply with its rules governing the submission of briefs in instances where the "record is short and the issues are simple" (*People v. Johnson*, 192 Ill. 2d 202, 206 (2000)), such instances do not include a complete failure to provide an argument in support of an issue on appeal. Here, we are not reviewing a brief that failed to include record citations. See *id.* at 206-07. We are reviewing a case for which *no* supporting argument was provided.

¶ 29    We are equally aware that an appellant is not required to provide a memorandum addressing the grounds for relief on appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). We respect an appellant's decision, or the decision of appellant's counsel, as to how they wish to proceed on appeal. However, we do not interpret the choice to file a notice stating it "will not file a Rule 604(h) memorandum" as an invitation for this court to provide argument for issues raised by the appellant in the notice of appeal. To do so would unequivocally transform this court's "role from that of jurist to advocate" (*Givens*, 237 Ill. 2d at 328), a role discouraged by our supreme court.

¶ 30    This is especially true in pretrial release cases. Here, the appellant is the defendant. His appointed trial counsel filed defendant's notice of appeal. Thereafter, OSAD was appointed as

defendant's counsel on appeal. "The principal function of the Office of the State Appellate Defender is to represent indigent persons on appeal in criminal cases when appointed by the Illinois Supreme Court, the Appellate Court or the Circuit Court," as stated by the agency on its website. See *About Us*, State Appellate Defender, https://osad.illinois.gov/aboutus.html (last visited Mar. 1, 2024) [https://perma.cc/2N3Q-F3JG]. OSAD provides no argument or basis to support its attempt to transfer its legally stated function to this court.

¶ 31    The Illinois Supreme Court-approved notice of appeal form provides eight blank lines under each issue listed as grounds for the appeal. The Illinois Supreme Court rules further allow for the submission of a memorandum, if desired, that would further allow an appellant to set forth argument for any ground listed in the notice of appeal. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). We interpret the court's actions as opportunities for any appellant to present the required argument either in the notice of appeal or in a memorandum, if so desired, under Rule 604(h)(2). In instances where no argument in support of the grounds listed in the notice of appeal is presented to this court, we could potentially consider the lack of argument as forfeiture of the issue. See *People v. Brown*, 2020 IL 125203, ¶ 25 ("[F]orfeiture is the failure to make the timely assertion of a right."). However, we cannot interpret the foreclosed opportunity as forfeiture when defendant's appointed counsel deliberately chooses to file a notice stating it will not file a memorandum under Rule 604(h)(2). OSAD's action is evidence of waiver, which is an "intentional relinquishment or abandonment of a known right or privilege." *Id.*

¶ 32    "The well-established rule is that mere contentions, without argument or citation of authority, do not merit consideration on appeal." *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991). Here, defendant's counsel, OSAD, chose to provide no memorandum despite its awareness that defendant's notice of appeal provided no argument in support of the grounds listed for review on

14

appeal. For the court to act as an advocate for defendant, when counsel was appointed for that specific purpose, undermines both the attorney client relationship between defendant and OSAD and our role as jurists.

¶ 33 While defendant complied with the requirement of Rule 604(h)(2), by providing the requested relief and grounds for the appeal, his counsel's failure to provide any argument in support of his appeal requires this court to speculate as to what the arguments of the parties would be and infringes on the attorney client relationship between defendant and OSAD. We find the former action contrary to supreme court precedent (see *Givens*, 237 Ill. 2d at 324) and the latter action wholly inappropriate and requiring dismissal of the appeal.

¶ 34 Equally inappropriate is defendant's petition for rehearing. We grant the petition for rehearing to address the erroneous basis provided therein. Rule 367 provides as follows:

"The petition shall state briefly the points claimed to have been overlooked or misapprehended by the court, with proper reference to the particular portion of the record and brief relied upon, and with authorities and argument, concisely stated in support of the points." Ill. S. Ct. R. 367(b) (eff. Nov. 1, 2017).

¶ 35 Here, defendant's petition for rehearing cites to nothing in the record to set forth what this court may have overlooked or apprehended. Further, no reference to any particular portion of record is provided. Instead, the petition claims this court should grant rehearing because in two completely different pretrial fairness cases, in which the appellate court dismissed the cases based on a lack of argument, the supreme court later issued supervisory orders with directions to consider the merits of the appeal.

¶ 36 Defendant's petition for rehearing is contrary to law. First, defendant presents no authority that would allow this court to ignore the supreme court precedent and issue a decision based on a

15

supervisory order issued in a different case. As stated by the Illinois Supreme Court, "We have repeatedly noted that supreme court supervisory orders are nonprecedential." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 221 (2008) (citing *People v. Phillips*, 217 Ill. 2d 270, 280 (2005), and *People v. Durr*, 215 Ill. 2d 283, 295 (2005)). In fact, a year after *Cinkus* was issued, the Illinois Supreme Court reminded future litigants "that citation to supervisory orders is inappropriate, as 'supreme court supervisory orders are nonprecedential.' " *In re Alfred H.H.*, 233 Ill. 2d 345, 352 n.2 (2009) (quoting *Cinkus*, 228 Ill. 2d at 221).

¶ 37    Second, supervisory orders are granted by the Illinois Supreme Court "only in limited circumstances." *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 512 (2001). "Their predominate use is to address issues which are brought" to their "attention in the context of petitions for leave to appeal, but which do not warrant full briefing, oral argument and issuance of an opinion." *Id.* "The most typical example of this is when a new opinion is released by [the Illinois Supreme Court] or by the Supreme Court of the United States which appears to be dispositive of other cases pending before [the Illinois Supreme Court] on petitions for leave to appeal." *Id.*

¶ 38    Here, there is no published decision by the Illinois Supreme Court or the United States Supreme Court overruling years of well-settled precedential case law requiring appellants to present an argument in support of the grounds raised on appeal. See *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010); *Greenlaw*, 554 U.S. at 244 ("[A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.' " (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment, joined by Thomas, J.))). We are bound by this precedent and without authority to overrule it. *Yakich v. Aulds*, 2019 IL 123667, ¶¶ 13, 15.

16

¶ 39 Another reason for a supervisory order is when "the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice [citation] or intervention is necessary to keep an inferior tribunal from acting beyond the scope of its authority." *Birkett*, 196 Ill. 2d at 513. Defendant presents no argument that this court acted beyond the scope of its authority or that the normal appellate process fails to provide adequate relief. Nor could he when his counsel specifically waived its opportunity to cure any defect stemming from trial counsel's failure to provide argument in support of the grounds listed in the notice of appeal. The law remains clear in stating that "the appellate and circuit courts of this state *must* enforce and abide by the rules of" the Illinois Supreme Court. (Emphasis in original.) *People v. Lyles*, 217 Ill. 2d 210, 216 (2005). Those directives include the requirement that "[b]oth argument and citation to relevant authority" are necessary to support an issue on appeal (see *Vancura*, 238 Ill. 2d at 370) and that " 'supreme court supervisory orders are nonprecedential' " (*In re Alfred H.H.*, 233 Ill. 2d at 352 n.2 (quoting *Cinkus*, 228 Ill. 2d at 221)).

¶ 40 We are aware of no case law that requires this court to interpret a supervisory order issued in a different case as the equivalent of an opinion and therefore dispositive of how this court should address a separate appeal. As shown above, the binding precedent reveals the opposite. *Cinkus*, 228 Ill. 2d at 221. Similarly, we are aware of no case law that requires this court, or any other appellate court, to set aside its jurist responsibilities to present an argument and advocate for a party when that party is represented by counsel and that counsel intentionally waives the opportunity to present argument on appeal.

¶ 41 Accordingly, this court will continue to adhere to our role as jurist and contain our authority to those actions consistent with supreme court precedent. See *Givens*, 237 Ill. 2d at 324.

Despite the defendant's petition utterly failing to comply with the requirements of Rule 367(b), we grant the petition for rehearing.

¶ 42                                    III. CONCLUSION

¶ 43     For the foregoing reasons, we dismiss defendant's appeal and grant defendant's petition for rehearing.

¶ 44     Appeal dismissed.

*People v. Burke*, 2024 IL App (5th) 231167

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Champaign County, No. 23-CF-1422; the Hon. Brett N. Olmstead, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd and Carolyn R. Klarquist, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |