NOTICE

Decision filed 04/23/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240195-U

NOS. 5-24-0195, 5-24-0294 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Douglas County. |
| | ) | |
| v. | ) | No. 24-CF-20 |
| | ) | |
| MANUEL ALCANTARA, | ) | Honorable Katherine D. Watson and |
| | ) | Honorable Chad S. Beckett, |
| Defendant-Appellant. | ) | Judges, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's orders granting the State's petition to deny pretrial release and continuing denial of pretrial release are affirmed where the trial court's findings were not against the manifest weight of the evidence and the orders denying pretrial release were not an abuse of discretion.

¶ 2    Defendant timely appeals the trial court's order denying his pretrial release and subsequent order continuing the denial of his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm both of the trial court's orders.

1

¶ 3                                    I. BACKGROUND

¶ 4     On February 5, 2024, defendant was charged, by information, with attempted second degree murder in violation of sections 9-2(a)(1) and 8-4(a) of the Criminal Code of 2012 (720 ILCS 5/9-2(a)(1), 8-4(a) (West 2022)), a Class 2 felony, and aggravated domestic battery in violation of section 12-3.3(a) (*id.* § 12-3.3(a)), a Class 2 felony. The public defender was appointed to represent defendant.

¶ 5     Also on February 5, 2024, a pretrial investigation report was filed that revealed defendant was 58 years old and single. He had four adult children who resided in Mexico. He had other family members who resided in Chicago. He had been living with his paramour for one month in Arcola. Defendant was employed full-time with Libman. He had no criminal history. Defendant reported no substance abuse history or mental health issues. He had high blood pressure for which he took medication daily. Defendant reported having a driver's license and a working vehicle to transport himself to future court dates. The pretrial services officer who conducted the investigation was unable to reach defendant's sister to verify the information supplied by defendant. The Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) scored defendant at a 0 out of 14 and classified him as a level 1 out of 6 with a 6.1% likelihood of recidivism while on pretrial release.

¶ 6     On February 5, 2024, the State filed a verified petition to deny defendant pretrial release. The petition alleged that defendant was charged with a qualifying offense and posed a real and present threat to the safety of any person, persons, or the community.

¶ 7     The trial court, Judge Watson, conducted the hearing on the State's petition to deny pretrial release on February 6, 2024. The State first asked the court to take judicial notice of the probable cause affidavit that was filed in the case and supported the court's finding of probable cause. The

2

State proffered that defendant was arrested for attempted second degree murder and aggravated domestic battery after police were called to his residence that he shared with the victim. It further proffered that defendant stabbed the victim three times—once in the rib cage, once in the left-side abdomen, and once in the left leg. The victim was able to lock herself in the bathroom until police arrived. She was in fear for her life and thought defendant was going to kill her. Defendant also made several statements to the victim and the police that he wanted to kill himself.

¶ 8   The State argued the incident was "severely dangerous." It averred it was not a simple battery, but one that resulted in stab wounds with the victim being transported to the hospital and defendant being transported to the hospital due to his suicidal threats. The State also asked the court to take into account defendant's psychological state. It informed the court that defendant was on suicide watch at the jail. The State argued that given the violent circumstances of the incident, the victim's wounds, and the specific danger defendant posed to the victim and to himself, there were no appropriate less restrictive options than the denial of pretrial release.

¶ 9   Defense counsel proffered that the victim was discharged from the hospital and did not have an extended stay. He further proffered that defendant was almost 60 years old, had no criminal history, and the pretrial services report indicated he scored very low for recidivism. Defendant admittedly had a problem with alcohol but was willing to abide by conditions of release that would include abstaining from alcohol and controlled substances, obtaining a substance use evaluation, and entering treatment. Defendant would also agree to abide by any no-contact order, submit to electronic monitoring, and report to pretrial services.

¶ 10   Defense counsel argued that there was no evidence submitted suggesting that defendant could not abide by conditions of release. He averred the court should consider defendant's history

3

of nearly "six decades of no criminal charges or activities or allegations of domestic violence or allegations of any violence whatsoever."

¶ 11    The court stated that it considered the pretrial investigation report, the probable cause affidavit, and the statements made by the attorneys. It stated that although defendant had no prior record, domestic violence crimes were not always reported and the level of violence in the current incident was concerning. The court noted that the victim felt she would be killed. It further noted that defendant "presents as mentally unstable at this time and at the time of the offense." The court opined that the presentence investigation report indicated that defendant did not have a stable residence other than the one he shared with the victim. The court then found that the proof was evident and the presumption was great that defendant committed a detainable offense and that he posed a real and present danger to himself, specific persons, or the community and that there were no conditions of release that could mitigate the real and present threat defendant posed to himself, others, or the community. The court added, "These things can be reviewed as he comes back before the Court, his mental stability and whether he has a stable residence that is separate and apart from the victim and the Court may consider GPS home monitoring at that time. The Court finds that those are not viable options for the reasons previously stated."

¶ 12    A written order of detention was filed on February 6, 2024. The order found the proof was evident or the presumption great that defendant committed a detainable offense. The order further found that defendant posed a real a present threat to the safety of any person(s) or the community and no condition, or combination of conditions, could mitigate the real and present threat to the safety of any person or persons. The order found that less restrictive conditions would not assure the safety of any persons, or the community based on (1) defendant's having caused bodily harm to a family member by stabbing her with a knife, (2) defendant's threatening to kill himself,

4

(3) defendant's lack of a stable residence, (4) defendant's use of alcohol to the point of intoxication, and (5) the victim's fear for her safety. The order thereafter committed defendant to the custody of the sheriff for confinement in the county jail pending trial. On February 6, 2024, defendant timely appealed the order denying pretrial release in *People v. Alcantara*, No. 5-24-0195. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023).

¶ 13     On February 14, 2024, defense counsel orally moved for a review of defendant's detention. Thereafter, the trial court, Judge Beckett, conducted a hearing on the motion. Defense counsel again proffered that defendant had no prior record, no prior allegations of domestic violence, and no prior orders of protection. He opined that the main concerns Judge Watson had when the court originally detained defendant were that defendant had no stable residence and his mental health was unstable. Counsel stated that since the date of the original detention hearing, defendant's sister and her husband offered their home in Cicero, Illinois, as a stable place for defendant to reside while this case was pending. They would guarantee defendant's attendance at court dates and would cooperate with GPS fittings of defendant if the court deemed it appropriate. Counsel further proffered that he had spoken with the jail administrator who reported that defendant's mental health had stabilized since his arrest. Defendant met with substance abuse peer specialists and with personnel from Douglas County Mental Health. Counsel argued that with those changes in defendant's circumstances, defendant's lack of a prior criminal record, and lack of failures to appear, along with there being no allegations of ongoing domestic abuse in the relationship between defendant and the victim, the court should find there were conditions that could be imposed to provide safety for the victim and/or others that did not necessitate defendant's continued detention.

¶ 14    The State argued that it opposed defendant's request. It proffered that the charges against defendant, aggravated domestic battery and attempted second degree murder, were both severe and detainable offenses. It reiterated that defendant stabbed the victim three times with a knife and the victim feared for her life. The State averred that although defendant may no longer have been a danger to himself, provided he continued treatment, the severity of the offenses indicated defendant posed an ongoing threat to the victim. The State argued that due to the nature of the offenses, it objected to any fashion of pretrial release. It added, if the court decided to grant pretrial release, that the court order defendant to have no contact with the victim.

¶ 15    The court stated that it was mindful of the previous findings by Judge Watson. It further stated that the previous findings regarding defendant's lack of residence and mental instability were not the court's only considerations. Other considerations included the defendant's infliction of bodily harm to a family member, the victim, with a knife as well as his threats to harm himself. In addition, the victim feared for her safety and her life. The court acknowledged that there had been "a little bit of progress" on defendant's part over the eight days since the original detention hearing. The court stated that despite the progress it heard, it did not have "a detailed understanding of what the defendant's mental health situation is now." It heard he was stabilized, but it did not hear "anything from a professional telling us how he got to where he was going and whether or not he truly is someone" it could "put faith in and will (a) remain sober; and (b) remain free from the kind of activities alleged *** in the Information *** through proffer by the victim." The court further stated that it did not have detailed information about the residence with defendant's sister and expressed concern that the residence was some distance from the court. The court found that "without a better understanding of defendant's mental health situation" and the likelihood that he would "remain free from consuming alcohol or substances," it could not "say today that he does

6

not pose a real and present threat to the defendant—to the victim or to the community." It then denied defendant pretrial release, finding there were "no combination of conditions [that] would satisfy the Court's concern in this regard." The court entered its order by docket entry. On February 26, 2024, defendant timely appealed the order continuing the denial of pretrial release in *People v. Alcantara*, No. 5-24-0294. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). We consolidated the appeals for purpose of this disposition.

¶ 16                                 II. ANALYSIS

¶ 17    Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 18    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances

7

surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (Code) (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 19    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 20    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court

is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for an abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 21                    A. *People v. Alcantara*, No. 5-24-0195

¶ 22    Defendant filed his first notice of appeal on February 6, 2024, requesting reversal of the trial court's order denying pretrial release. Defendant listed three issues on review: (1) whether the State failed to meet its burden of proving defendant posed a real and present threat to the safety of any persons or the community; (2) whether the State failed to meet its burden of proving that no condition or combination of conditions could mitigate defendant's dangerousness; and (3) whether the court erred in determining that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearing or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. On March 6, 2024, defendant's counsel on appeal, the Office of the State Appellate Defender (OSAD), filed its notice that it would not be filing a Rule 604(h) memorandum.

¶ 23    The State filed a Rule 604(h) memorandum on March 25, 2024. The State argued that the trial court's findings that defendant posed a real and present threat to others or the community and that there were no conditions of pretrial release that would reasonably ensure the safety of others or the community were not against the manifest weight of the evidence.

¶ 24    Defendant first argues that the State failed to meet its burden of proving by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or

9

persons or the community. He avers that the State presented virtually no evidence beyond the charged offense. He opines that nothing was presented regarding defendant's lack of a criminal record or lack of history of abuse or harassment of the victim or any other person.

¶ 25    The issue raised is one of the sufficiency of the evidence. Typically, when considering the sufficiency of the evidence, "the reviewing court must view the evidence 'in the light most favorable to the prosecution.' " *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Id.* In this case, the question becomes, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found' " (emphasis in original) (*id.* at 278 (quoting *Jackson*, 443 U.S. at 319)) that the State proved by clear and convincing evidence that defendant posed a real and present threat to any person(s) or the community.

¶ 26    As noted above, the statute provides factors for the trial court's consideration in determining dangerousness. Included in those factors are the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense." 725 ILCS 5/110-6.1(g)(1) (West 2022). Here, the offense was violent (a stabbing) and involved a weapon (a knife). Moreover, defendant threatened to harm himself. Based on this evidence, the trial court's finding that defendant posed a real and present threat to the victim and himself was not against the manifest weight of the evidence.

¶ 27    Defendant's second argument contends that the State failed to prove that no condition, or combination of conditions, would mitigate his dangerousness. In support, defendant argues that the State presented no evidence that he had a history of domestic violence or harassment or a

history of violating court orders. He further argues that defendant expressed a willingness to comply with any conditions of release. This issue also involves the sufficiency of the evidence.

¶ 28     Again, we disagree with defendant's argument. Although the State did not present evidence of a history of domestic violence or harassment or a history of violating court orders, it did present evidence that defendant was mentally unstable and had no stable residence apart from that of the victim to which he could return should he be released. Based on this evidence, the trial court's finding that no condition or combination of conditions could mitigate his dangerousness was not against the manifest weight of the evidence. Accordingly, we cannot find that the trial court's reliance on the State's proffer to conclude that no condition of pretrial release would mitigate defendant's dangerousness was against the manifest weight of the evidence.

¶ 29     Defendant's last argument contends that the trial court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. However, this issue is only relevant in instances where previously issued pretrial release conditions are revoked. See *id.* § 110-6(a). Our review of this record confirms the trial court's order did not include revocation of any previously issued pretrial release condition. Accordingly, this issue has no merit.

¶ 30     None of the trial court's findings relating to dangerousness or the lack of condition, or combination of conditions, available to mitigate defendant's dangerousness, were against the manifest weight of the evidence. As such, we hold that the trial court's ultimate disposition, denying pretrial release, was not an abuse of discretion.

11

¶ 31                    B. *People v. Alcantara*, No. 5-24-0294

¶ 32    Regarding the second appeal, we first address the standard of review for proceedings addressing continued detention after the initial pretrial detention hearing. The State argues that the proper standard of review for reviewing a trial court's order of continued detention under section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2022)) is the abuse of discretion standard. In support of its argument, it cites *People v. Long*, 2023 IL App (5th) 230881, ¶ 16. Defendant argues the proper standard of review is the manifest weight of the evidence standard.

¶ 33    This appellate district has repeatedly employed a twofold standard of review of pretrial detention determinations. *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 33-34; *People v. Burke*, 2024 IL App (5th) 231167, ¶ 20. Under this twofold standard, we review the court's factual findings under the manifest weight of the evidence standard and the ultimate denial of pretrial release for an abuse of discretion. *Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 33-34; *Burke*, 2024 IL App (5th) 231167, ¶ 20. While the court is not required to make the same findings as the initial detention order for subsequent pretrial detention determinations, section 110-6.1(i-5) requires the court to "find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). *Long* departs from this district's caselaw and utilized only an abused discretion standard of review, citing to the Fourth District case *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. Without convincing argument to abandon our twofold standard of review, we continue to follow this district's caselaw and review for the trial court's factual findings against the manifest weight of the evidence.

¶ 34    Proceedings that occur after the court has issued a pretrial detention order under section 110-6.1(a) and (h) of the Code (725 ILCS 5/110-6.1(a), (h) (West 2022)) are addressed in section 110-6.1(i-5). At this stage, the trial court is not obligated to make the same findings. *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 27. Rather, "the court must find 'that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution.' " *Id.* (quoting 725 ILCS 5/110-6.1(i-5) (West 2022)).

¶ 35    Defendant filed his second notice of appeal on February 26, 2024, requesting reversal of the court's order continuing the denial of his pretrial release and remand for a hearing on conditions of release. Defendant listed two issues for review: (1) whether the State failed to meet its burden of proving that no condition or combination of conditions could mitigate the threat posed by defendant or his willful flight; and (2) whether the court erred in determining that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearing or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. OSAD filed a Rule 604(h) memorandum on March 25, 2024. In it, OSAD argued that conditions existed that would mitigate any risk posed by defendant's release and the court erred when it found no conditions or combination of conditions would be sufficient.

¶ 36    In *Forthenberry*, this court held that when a supporting Rule 604(h) memorandum is filed, it becomes "the controlling document for issues or claims on appeal" and the notice of appeal would not be used to "seek out further arguments not raised in the memorandum" unless jurisdiction was raised as an issue. *Forthenberry*, 2024 IL App (5th) 231002, ¶ 42. Other appellate districts have also adopted this holding. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22;

13

*People v. Martin*, 2024 IL App (4th) 231512-U, ¶ 59. Therefore, we will rely solely on OSAD's memorandum for defendant's argument.

¶ 37 OSAD argues that at the first hearing, Judge Watson indicated that she "may consider GPS home monitoring" if defendant demonstrated his mental health had stabilized and he had a stable residence separate from the victim. It avers that defendant exceeded meeting those requirements. OSAD argues that at the detention review hearing, defense counsel proffered that the jail administrator reported that defendant's mental health was stabilized after defendant met with mental health providers and substance abuse specialists. It further argues that defendant's sister was present at the hearing and that counsel proffered that defendant could live with the sister and her husband in Cicero, Illinois, which was located about 2½ hours from Douglas County, they would guarantee defendant's attendance at court hearings, and they would help defendant comply with GPS monitoring should it be required. OSAD further argues that counsel stressed defendant had no criminal history, was never the subject of an order of protection, and there were no allegations of ongoing abuse in his relationship with the victim.

¶ 38 OSAD also argues that the State presented no evidence and no specific argument regarding conditions of release, and referred to conditions only to ask that a no-contact order be imposed should defendant be released. It avers that the State failed to prove by clear and convincing evidence that no conditions could mitigate any risk defendant posed to the victim.

¶ 39 OSAD further argues that Judge Beckett's findings did not support a conclusion that no conditions could mitigate any risk. It avers that while the court acknowledged that defendant did exactly what Judge Watson proposed at the previous hearing—he presented evidence of his mental stability and a guarantee of housing separate from the victim—it found that it needed a more detailed understanding of defendant's mental state as well as information from a professional about

14

whether defendant would remain sober and free from activities that led to his charged offenses. OSAD argues that if the court was concerned about continued alcohol use by defendant, it could have ordered secure continuous remote alcohol monitoring (SCRAM) which alerts authorities if alcohol is detected in the wearer's sweat.

¶ 40    OSAD argues whether the victim feared for her safety and her life should defendant be released does not show that there are no conditions to mitigate any risk he posed. It further argues that, as the State acknowledged in the charging document, defendant was "acting under a sudden and intense passion resulting from a serious provocation," and therefore it follows that without provocation there would be no further offenses.

¶ 41    OSAD also takes issue with the court's finding that it did not have sufficient information about defendant's proposed placement with his sister and that it was concerned that the residence was "some distance" from Douglas County. It argues the court's concern was "illogical." OSAD avers that the distance may have been a concern if defendant were alleged to be a flight risk, but that allegation was never made. It opines that, "In fact, a residence two and half hours away from [the victim] would be an excellent way to mitigate any risk, particularly with GPS monitoring."

¶ 42    The State argues that the court's finding that defendant's continued detention was necessary to avoid a real and present threat to the safety of the victim was not an abuse of discretion. It avers Judge Beckett considered the prior findings of Judge Watson from the initial detention hearing which included defendant not having a stable residence, his alcohol and substance abuse issues, defendant stabbing the victim with a knife resulting in bodily harm, and defendant's threats to kill himself. The State further argues the court considered that the victim feared for her safety and her life should defendant be released. The State avers that after considering the articulable facts of the case, the court's finding that defendant continued to pose a

15

real and present threat to the victim was "entirely reasonable" as was its requirement for more detailed information.

¶ 43 Here, Judge Beckett reviewed the initial detention order and acknowledged Judge Watson's earlier concerns. Also, the State again proffered the seriousness of the offense, the bodily harm inflicted, and the victim's fear of defendant. While it appears defendant's mental stability improved in the eight days between the hearings, there was no professional opinion that defendant was no longer a threat. We cannot say that Judge Beckett's finding that he simply did not have enough information to determine that defendant was no longer a threat such that pretrial conditions could be effective was against the manifest weight of the evidence. Although the court's initial concern regarding defendant's residence may have been resolved by defendant staying with his sister, we cannot find that the alternative residence disposes of the continuing issues related to defendant's mental health. As such, we cannot find that the trial court's findings were against the manifest weight of the evidence or that its disposition continuing the denial of pretrial release was an abuse of discretion.

¶ 44                                    III. CONCLUSION

¶ 45 For the reasons stated herein, the trial court's findings in its initial order denying defendant's pretrial release were not against the manifest weight of the evidence and its disposition detaining defendant was not an abuse of discretion. Likewise, the trial court's findings in its order continuing defendant's detention were not against the manifest weight of the evidence and its disposition continuing detention was not an abuse of discretion. Therefore, we affirm both of the trial court's orders.

¶ 46 Affirmed.