2024 IL App (2d) 240070
No. 2-24-0070
Opinion filed May 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 23-CF-2835 |
| JEREMIE R. HARRIS, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment, with opinion.

**OPINION**

¶ 1    The State appeals from an order of the circuit court of Kane County releasing defendant, Jeremie R. Harris, from pretrial detention and placing him on electronic home monitoring (EHM) after the court had initially granted the State's petition to detain him.[1] Pretrial release is governed

_____

[1]We apply the newly amended Illinois Supreme Court Rule 604(h)(8) retroactively, which allows a disposition to be filed 100 days from the date the appellant filed the notice of appeal. Ill. S. Ct. R. 604(h)(8) (eff. Apr. 15, 2024). The amendment to Rule 604(h)(8) is clearly procedural in that it dictates the time allotment for filing a disposition. *Id.* "It is well settled that statutory

by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act or Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (collectively, the Act), as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Code); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date for the Act as September 18, 2023).

¶ 2      The State charged defendant with one count of residential burglary (720 ILCS 5/19-3(a) (West 2022)), and the trial court entered a detention order after an initial hearing on the State's verified petition to detain. Defendant subsequently appeared before a different judge who determined under section 110-6.1(i-5) of the Code that defendant did not pose a danger to the alleged victim in the case and ordered pretrial release with conditions. 725 ILCS 5/110-5(a), (h), 6.1(i-5) (West 2022). We vacate the order of pretrial release and remand this cause for the trial court to provide a record of its findings to determine the conditions of pretrial release, explaining which matters it took into account under section 110-5(a), and to set forth the basis for its finding to impose EHM as a condition for defendant's pretrial release under section 110-5(h). *Id*.

---

amendments may be applied retroactively where they are purely procedural and do not impair a vested right," and that the "supreme court's retroactivity framework 'applies equally to supreme court rules.' " *People v. Easton*, 2017 IL App (2d) 141180, ¶ 14 (citing *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331 (2006) and quoting *People v. ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 620-21 (2006)).

¶ 3                                    I. BACKGROUND

¶ 4     On January 2, 2024, the State filed its verified petition to deny defendant pretrial release, in which it asserted that the trial court could find probable cause to detain defendant based upon: (1) the alleged commission of a detainable forcible felony in this case, (2) a considerable prior criminal history, including the commission of felonies such as aggravated assault, and (3) 24 pending criminal matters from 2023, including the alleged commission of felonies such as battery and assault. Judge Clint Hull conducted an initial detention hearing on the State's petition the same day.

¶ 5     At the hearing, Judge Hull considered the criminal complaint charging defendant with one count of residential burglary, the public safety assessment report, the State's verified petition, and the police synopsis, which included a description of the events that resulted in defendant's arrest. The synopsis stated that on December 31, 2023, at about 5:33 p.m., Officer Michael Licari of the Aurora Police Department was dispatched to respond to a residential burglary call from 968 Oliver Avenue. When Officer Licari arrived at the scene, he spoke with the complainant, identified as Steven Kluber, who stated that he was inside his residence when two individuals, who he identified as Jeremie Harris and Jerome Harris, knocked on his front door. Defendant had told Kluber that he wanted to apologize to him regarding a previous incident that had occurred a few weeks ago. Kluber told Harris that he was not welcome on his property and asked him to leave. When Kluber began to close his front door, defendant pushed the door open and entered the residence, knocking Kluber down to the floor. Kluber stood up and tried to reason with defendant, but instead, defendant grabbed a jar of legally owned medicinal cannabis and hash from the living room and proceeded to walk towards Kluber's kitchen. Kluber followed defendant and tried to stop him. Defendant pushed Kluber to the ground a second time and grabbed a bottle of vodka from the

kitchen. Defendant then exited the rear of the residence while Jerome exited from the front door. Kluber told Officer Licari that Jerome appeared to be telling defendant to stop and that Jerome did not engage in any criminal activity. Kluber did not sustain any visible injuries. Kluber estimated that the jar of cannabis and hash was valued at approximately $800 and the bottle of vodka was valued at approximately $35.

¶ 6    After reviewing the police synopsis, Judge Hull found probable cause to consider the State's verified petition to deny defendant pretrial release. In response to the State's petition, defendant argued that he should be released from custody to stay with his mother at her apartment in Aurora. Defense counsel told the court that defendant is employed as a janitor at the Greyhound Bus Station and commutes to and from work by train. Defense counsel also proffered that defendant has three children and "some active criminal cases." The State argued that there were no less restrictive means other than detaining defendant considering his criminal history and 24 pending criminal matters, 14 of which included criminal trespass charges. The State also asserted that Kluber was nearly 70 years of age and that it had concerns for his safety "given that *** defendant sa[id] he was going to apologize to Mr. Kluber for an incident that occurred a few weeks ago" and that instead, "the apology turned violent and completely defeated the purpose, especially after Mr. Kluber told the defendant that he was not welcome there in the first place." Defense counsel requested defendant's release with conditions that he not contact Kluber and argued that the other pending matters "appear to be non-detainable offenses."

¶ 7    Judge Hull found that the State proved by clear and convincing evidence that defendant had committed the forcible felony of residential burglary. The trial court also found that the State proved by clear and convincing evidence that defendant "poses a real and present threat to the safety of a specific and identifiable person and that person being the victim in this case." The court

stated, "I do find based upon the proffer that the evidence shows that the defendant had forcibly entered Mr. Kluber's house despite being told that he was not welcomed into the house, that while in the house he ended up pushing and knocking the victim to the ground, and then took a jar of medicinal cannabis as well as alcohol." Further, the court found that the State had proved that there was no less restrictive condition that would ensure the safety of Kluber or the community, "and to assure his appearance in court based upon the fact that again, number one, [] he has an extensive criminal history including an offense of aggravated battery for which the defendant was sentenced to the Illinois Department of Corrections year 2020, that he has a number of pending criminal cases which show that the defendant is unable to [conform] his behavior to the laws of our court." For those reasons, the court concluded there were no less restrictive conditions or a combination of conditions that would ensure the safety of Kluber, the community, or guarantee his appearance in court.

¶ 8    Defendant responded to the trial court's decision by stating aloud, "I'm not going to trial on this shit. F***ing liars. You're white liars, you know. Crackers, man. You're liars."

¶ 9    Judge Hull entered a written pretrial detention order, also dated January 2, 2024, which included the findings that (1) the proof was evident or the presumption great that defendant committed a detainable offense, (2) defendant posed a threat to the safety of Kluber and to the community, and (3) no combination of conditions could mitigate the threat to the safety of the victim or the community. The trial court entered a remand order and an "Initial Appearance Order" setting a status date on January 17, 2024. The record on appeal includes no written detention order from that hearing. Defendant filed a notice of appeal from that ruling on the same day, which was docketed in this court as People v. Harris, No. 2-24-0014.

¶ 10 On January 17, 2024, defendant appeared by video conference before a different judge, Judge David Kliment. The assistant public defender told the trial court that he had yet to meet with defendant and requested a new hearing date to determine whether "there is any new additional information to present to the Court regarding his in-custody status." The court scheduled another status date and stated, "Given the absence of any new information, I find that it is still necessary to hold the defendant in detention based on the findings that were made by Judge Hull and on the synopsis which is in the file." The court entered an order on the same date reflecting its findings and continuing the matter for hearing on defendant's motion "to make a ruling on defendant's detention," to be held on January 24, 2024.

¶ 11 On January 24, 2024, defendant again appeared before Judge Kliment, at which point defense counsel asked the judge whether he could retrieve property from defendant's possessions held at the jail, "specifically, a Metra ticket which I think would be informative to the Court as to his continued detention." The court continued the matter to the afternoon to allow defense counsel to retrieve the train ticket. The State then filed a written objection to pretrial detention review hearing based on defendant's pending appeal. The State argued that, because defendant filed a notice of appeal from an interlocutory order of the trial court, the court is then restrained from entering any further order that would change or modify the appealed order. The State's written objection also quoted Illinois Supreme Court Rule 604(h)(6) (eff. Sept. 18, 2023), which states that the trial court "shall retain jurisdiction to proceed with the case during the pendency of any appeal from an order entered pursuant to sections 110-5, 110-6, and 110-6.1 of the Pretrial Fairness Act."

¶ 12   When the case was recalled that afternoon, defense counsel informed the trial court that he had obtained the train ticket from defendant's property that was being stored at the Kane County Sheriff's Office. The court considered the State's written objection and stated as follows:

"I have consistently ruled that I believe to deny [defendant] the right to proceed, especially if there is new information, would have a chilling effect on our ability to file an appeal in the first place. And I do not think that was the intent of the legislature with respect to the Pretrial Fairness Act.

But the act did contemplate appeals and it did contemplate that every court date, court appearance, the custodial status of the defendant would be reevaluated by the court each time.

So I'm going to, without argument, deny your motion. Although it's a well-written motion, I simply don't agree with the underlying premise."

¶ 13   Defense counsel then advised the trial court that defendant does not have a vehicle, is an unhoused person, and "that he has been residing in Cook County for the majority of the pendency of his other cases over at the Kane [County] branch court." Defense counsel stated that the allegations of this case show the commission of the crime occurred at an address on Oliver Avenue on December 31, 2023, at approximately 5:33 p.m. Defense counsel stated that he searched for that location on Google Maps, which indicated that to walk from the Aurora Metra train station to 968 Oliver Avenue would take 44 minutes. Defense counsel presented the Metra ticket that he had retrieved earlier and noted the date of sale stamp as December 31, 2023. Defense counsel then played a recorded voicemail message to the court that he had received from Metra earlier that afternoon, which is not included in the record on appeal. Defense counsel explained that he had contacted Metra ticketing "to help determine how we can find out when that ticket was purchased."

He provided the Metra ticketing agent with the serial number of the ticket, as well as the location from which defendant allegedly purchased it at Union Station in Chicago. Defense counsel stated that, based on another Google Maps search, he found that a Metra train from Union Station in Chicago to the Aurora Metra station is a 57-minute trip.

¶ 14 Defense counsel also noted that he received a videotaped interview of defendant, as well as body camera footage from the responding police officers. He pointed out that the responding officers did not conduct a photo lineup and that there is no evidence that Kluber identified defendant as the perpetrator. In addition, defense counsel mentioned that Aurora Police Officer Beiringer included a supplemental incident report, which also is not part of the record on appeal. In that report, defendant denied that he knew the victim, but later stated that "he was at Miss Lee's with Steve and a female bartender," and that "[h]e had known Steve *** for a minute from Miss Lee's and described him to be a male black that was approximately 60 years old." Defense counsel had called Miss Lee's bar to ask if there was any employee named "Steve" who worked there and confirmed that there is an employee at the bar named Steven Benton.

¶ 15 The defense argued that the decision to detain defendant was "a complete rush-to-judgment situation." Defendant had acknowledged that he was at a bar with "Steve and the bartender." According to the defense, "it's clear from the report that the officer assumed that he was talking about Mr. Kluber" and "putting the two and two together, essentially saying that [defendant] was lying and that he knew Mr. Kluber because he said he was at the bar with Steve who, in fact, was Steve Benton, not the alleged victim in this case, Steve Kluber."

¶ 16 The defense further contended that, based on the body camera footage, Kluber had told the responding officers that the person who had committed the offense was "Jeremiah Harris" and not "Jeremie Harris." According to the defense, "[t]he only time Jeremie Harris was said on scene was

from the officer." Defense counsel acknowledged that Kluber spoke to the officers after just having been released from the hospital, while he was out of breath and clutching his chest. Finally, Kluber had described the offender as "a big tall black man and raised his hand over his head in the door frame which reached almost the top of the door frame," while defendant measured 5 feet, 9 inches, and weighed 160 pounds. The defense argued that defendant did not present as a danger to anyone or specifically to Kluber based on its proffer. The defense contended that, given the evidence it proffered, "at a minimum, it shows that [defendant] was not even in Aurora at the time of 5:33, nor could he arrive at Aurora Metra and walk to that address which is an additional 44-minute walk and make it there by 5:33."

¶ 17 The State responded that there is no evidence showing that defendant was the person who purchased the ticket: "[i]t could have been anyone that purchased the ticket. It could have been lying on the floor and picked up." The State argued "[w]e don't know that this defendant was the one who purchased that ticket and was the one who took the train from Chicago to Aurora at 4:17 p.m." The State contended that the synopsis specifically showed Kluber identified defendant as the individual who forced his way into his residence. The State also noted that, while in the body camera footage, Kluber stated the name "Jeremiah," in the initial 911 call to the police, he stated and spelled out the name "Jeremie." In addition, the State proffered evidence from the police report showing that Kluber had known defendant since the previous summer because he had been paying defendant weekly to cut his lawn. Further, the State proffered that "a few weeks ago, before this incident, the defendant was at the victim's house with a few of the defendant's friends and during the event, the defendant stole a bottle of alcohol from the victim."

¶ 18 The State asked the trial court to consider the information from the police synopsis, as well as the new information proffered from the police report. The State showed that Kluber had contact

with defendant on multiple occasions prior to the commission of the offense in this case. The State argued that, "while there [was] not a photo lineup, we do have information that this victim knew who was the individual at his door." The State also requested the court to consider defendant's criminal history and pending criminal cases. The State contended that because defendant was without a residence, he could not be placed on EHM. Finally, the State proffered a statement from defendant's interview with the police during which he stated, "[i]f I go to jail or prison, his ass dead, because you killed him, you know you did, you murderer mother f***." The State argued that it had serious concerns for Kluber's safety based on defendant's statement. The State requested that the court deny defendant's motion for reassessment of pretrial detention based on its proffer and additional evidence showing that he is a real and present threat to Kluber's safety.

¶ 19    After further argument by the defense, the trial court stated, "[t]hat Sunday train, if that was the train that [defendant] took, would have left Chicago around 4:40 and got to Aurora at 6:01 P.M. It's not an express train which is the 57-minute one. It stops at every single stop the whole way on Sunday." The court continued, "[b]ut that goes to the State's proofs at trial. This goes to the dangerousness. I don't see the dangerousness in the first place to this victim." The court ordered the release of defendant from pretrial detention subject to the following conditions:

> "One, that you reside with your mother in Aurora after being placed on electronic home monitoring.
>
> Two, that you stay away from the address where this allegedly occurred on Oliver Street and you stay away from Steven Kluber.
>
> When I say stay away, if he is in a place you go into, you turn around and walk the other way.
>
> ***

Then EHM can only be at your mother's house, you can't be anywhere else.

\*\*\*

Public safety assessment recommends maximum conditions. You'll be placed on maximum conditions. You must comply with their requirements."

¶ 20    The trial court entered a written order dated January 24, 2024, for defendant's EHM program and a separate order of the same date delineating defendant's pretrial release conditions. The pretrial release conditions order required defendant to comply with the maximum conditions of supervised release and prohibited any contact with Kluber or Kluber's residence. In addition, the order required defendant to stay with his mother in Aurora, follow EHM rules, and submit random urine testing for alcohol. Another order entered the following day stated that, "[a]fter arguments from both parties regarding defense's request for reassessment of the defendant's detention, the court finds that there is no dangerousness to the specific victim and the defendant is to be released on EHM & terms of conditions."

¶ 21    On January 26, 2024, the State filed its notice of appeal, arguing that the earlier ruling on January 2, 2024 to grant the State's verified petition to detain defendant and defendant's subsequent notice of appeal removed the trial court's jurisdiction to make its ruling on January 24, 2024 to release him from pretrial detention. The State also contended that the court erred in its determination that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. According to the State, based on its proffer and defendant's criminal history, the court erred in its determination that defendant does not pose a real and present threat.

¶ 22    On February 22, 2024, defendant filed an unopposed motion to dismiss his appeal as moot. This court granted his motion and dismissed the appeal as moot on February 23, 2024. We now consider the State's appeal.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, each side has filed a memorandum pursuant to Rule 604(h)(7) (eff. Sept. 18, 2023). The State sets forth three arguments. First, the State argues that when the trial court reassessed defendant's pretrial detention on January 24, 2024, the court erred by not making findings as to whether (1) the proof was evident or the presumption great that defendant committed a detainable offense; (2) defendant, under the "dangerousness" factors set forth in section 110-6.1(g), posed a real and present threat to the physical safety of a specific, identifiable person or to the community at large; or (3) the conditions or a combination of conditions could mitigate the real and present threat to the safety of any person or persons or the risk of defendant's willful flight to avoid prosecution. Second, the State argues that the court violated section 6.1(h)(1) of the Code by failing to provide written findings and a written order in accordance with the statute. Third, the State contends that the court abused its discretion by failing to "recognize the absurdity" of defendant's false identification claim as a basis for granting his release from pretrial detention, thereby abusing its discretion "in placing any weight on this claim."

¶ 25    Defendant responds that the trial court did not abuse its discretion because it considered new evidence presented without objection on reassessment and properly determined that the State had failed to meet its burden that he should be detained. Defendant argues that he presented reliable new evidence on January 24, 2024, that demonstrated he did not commit the offense and that the court was required to consider this evidence at a subsequent appearance. Further, the court provided solid reasoning when it determined defendant was "not an unmitigated threat" requiring

pretrial detention because the Metra train ticket showed defendant would have left Chicago at 4:40 p.m. and arrived in Aurora at 6:01 p.m., thus making it impossible to be present at Kluber's home at the time of the offense. Defendant points out that the State made no effort to address this evidence on appeal. Further, defendant argues that the court imposed reasonable conditions to ensure the safety of Kluber and the community when it ordered him to reside with his mother on EHM. Finally, defendant contends that it would be "a waste of judicial resources" to remand this cause to the trial court to enter a written order of its findings because the court fairly allowed both parties to present evidence and argument concerning defendant's detainment and made a proper oral ruling.

¶ 26    Before addressing the merits of this appeal, we first determine whether the trial court had jurisdiction to reassess defendant's pretrial detention on January 24, 2024, considering the unusual procedural posture of this case following defendant's appeal of the court's decision on January 2, 2024. Indeed, "[t]he filing of a notice of appeal 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2008) (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 87 (1998)). Although the State raised the issue of the trial court's jurisdiction in its notice of appeal, it did not mention the argument in its memorandum in support of its Rule 604(h) appeal. Nevertheless, we have a duty to consider jurisdictional issues *sua sponte* and to dismiss an appeal if jurisdiction is lacking. See *People v. Brown*, 2020 IL 124100, ¶ 17; *People v. Walker*, 395 Ill. App. 3d 860, 863 (2009).

¶ 27    Rule 604(h)(1) provides that orders denying pretrial release are appealable by a defendant. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). As the State acknowledged in its objection to the circuit court's pretrial detention review hearing based on defendant's pending appeal, Rule 604(h)(6) specifically provides that "[t]he circuit court shall retain jurisdiction to proceed with the

case during the pendency of any appeal from an order entered pursuant to sections 110-5, 110-6, and 110-6.1" of the Code. Ill. S. Ct. R. 604(h)(6) (eff. Sept. 18, 2023); see also newly amended Ill. S. Ct. R. 604(h)(9) (eff. Apr. 15, 2024) (same). In this case, defendant timely appealed from the circuit court's January 2, 2024 decision to grant the State's verified petition to deny defendant pretrial release under section 110-6.1 of the Code. Accordingly, under the supreme court rule in effect at the time, Rule 604(h)(6), the trial court retained jurisdiction to proceed with the case during the pendency of appeal number 2-24-0014 when it reassessed defendant's pretrial detention on January 24, 2024. *Id*. Indeed, the Code requires the trial court to make findings at each of a defendant's subsequent court appearances. See 725 ILCS 5/110-5(f-5); §§ 110-6(j), 110-6.1(i-5). Further, "[a] court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority. [Citations.] A court's power to reconsider and correct its decisions extends to interlocutory, as well as final, judgments." *People v. Mink*, 141 Ill. 2d 163, 171 (1990). In any event, defendant moved without objection to dismiss his appeal as moot and this court granted his motion on February 23, 2024. This court has jurisdiction over the State's appeal under Rule 604(h)(1)(i) (eff. Sept. 18, 2023). We now turn to the merits.

¶ 28    Pretrial release is governed by article 110 of the Code. 725 ILCS 5/110-1 *et seq.* (West 2022). Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a), 110-6.1. In Illinois, all defendants are eligible for—and we presume all defendants are entitled to—pretrial release. *Id*. §§ 110-2(a), 110-6.1(e). The Act "shall be liberally construed to effectuate the purpose of relying on pretrial release by nonmonetary means to reasonably ensure *** the protection of the safety of any other person or the community ***." *Id*. § 110-2(e). At any detention hearing, the State and defendant may present evidence "by way of

proffer based upon reliable information." *Id*. § 110-6.1(f)(2). The State bears the burden of proof at all times in cases where it is alleged that pretrial release should be denied upon the grounds that a defendant presents a real and present threat to the safety of any person. *Id*. §§ 110-2(c), 110-6.1(e).

¶ 29    To deny a defendant pretrial release, the trial court must find the State proved by clear and convincing evidence that (1) the proof was evident or the presumption great that defendant committed a detainable offense (*id.* § 110-6.1(e)(1)), (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* §§ 110-2(b), (c), 110-6.1(e)(3), (f)). In determining the second of these prongs, a court may consider various statutory factors bearing on a defendant's "dangerousness." *Id*. § 110-6.1(g). If the court finds that the State proved by clear and convincing evidence a real and present threat to the safety of any person or the community (and/or the defendant's likely willful flight to avoid prosecution), the court must then determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In making this determination, "the court shall, on the basis of available information, take into account" various "matters" listed in section 110-5(a). *Id*. Even when a defendant is found to pose a real and present threat, in order to detain the defendant, the State must also prove that no condition or combination of conditions "can mitigate" that threat. *Id*. § 110-6.1(e)(3).

¶ 30    When the trial court determines that a defendant should be denied pretrial release, the Act requires that the court make "a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case ***." *Id.* § 110-6.1(h)(1). To the contrary, if the court determines that a defendant should be placed on pretrial release, section 110-5 of the Code does not contain an explicit requirement that the court make written findings or enter an order explaining the court's reasons for placing a defendant on pretrial release. *Id.* § 110-5. Section 110-5 provides certain mandatory considerations for determining conditions of pretrial release, but does not require written findings except when the court "imposes electronic monitoring, GPS monitoring, or home confinement." *Id.* § 110-5(h). In such instances, the court "shall set forth in the record the basis for its finding." *Id.*

¶ 31    Under the Act, denial of pretrial release may be appealed by a defendant, while the denial of a petition for pretrial detention may be appealed by the State. *Id.* § 110-6.1(j), (k).

¶ 32    Our standard of review of pretrial detention and release determinations is twofold. We review whether the trial court's factual findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when " 'the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *People v. Chatman*, 2024 IL 129133, ¶ 34 (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)); *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the decision of the trial court is " 'arbitrary, fanciful,

unreasonable,' " or when " 'no reasonable person would agree with the position adopted by the circuit court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 33    Further, *de novo* review is appropriate when considering statutory interpretation and application of the Code in this case. *People v. Lane*, 2023 IL 128269, ¶ 10; *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005).

¶ 34    The State argues that the trial court failed to make the requisite findings to ensure defendant would appear in court and not reoffend. It contends that the factors the court initially considered under section 110-6.1(g) did not change between the initial pretrial detention hearing on January 2, 2024, and the reassessment of defendant's pretrial detention on January 24, 2024. The State argues that the court abused its discretion by failing to submit a written order and by considering "the absurdity" of defendant's claims regarding Kluber's failure to pronounce his name properly when he identified the perpetrator as "Jeremiah" instead of Jeremie. The State's argument makes no mention of the Metra ticket defendant submitted to establish a purported alibi at the January 24, 2024 hearing.

¶ 35    Defendant responds that the trial court, after it was presented with new, allegedly exculpatory evidence, which it was required to consider under section 110-6.1(i-5) of the Code, properly determined that he qualified for release from pretrial detention. According to defendant, the court imposed reasonable conditions to ensure the safety of Kluber and the community, and to which defendant had agreed to abide. Defendant contends the State failed to explain how the court's January 24, 2024 oral ruling violates the Act and warrants reversal.

¶ 36    First, we note the parties do not dispute that defendant is charged with a qualifying offense for pretrial detention under the Code. See 725 ILCS 110-6.1(1.5) (West 2022). The dispute on

appeal centers on the trial court's determination that defendant was not dangerous and setting conditions of release at his subsequent appearance. The court had initially determined on January 2, 2024, that the State had proven by clear and convincing evidence that defendant posed a real and present threat to the safety of Kluber based on the specific, articulable facts of the case. In addition, the court at that time found that no condition or combination of conditions could mitigate the real and present threat to Kluber's safety or the risk of defendant's willful flight to avoid prosecution, noting defendant's 24 pending criminal cases and verbal threat directed at Kluber. In its oral ruling, the court specifically found that less restrictive conditions would not assure safety to Kluber or the community, noting defendant's "extensive criminal history including an offense of aggravated battery for which defendant was sentenced to the Illinois Department of Corrections year 2020, that he has a number of pending criminal cases which show that the defendant is unable to [conform] his behavior to the laws of our court." Thus, at issue here is the court's decision to grant defendant pretrial release at his subsequent appearance under section 110-6.1(i-5) of the Code.

¶ 37 Although this question was not identified by either party in their memoranda, this case presents the question of what is required under the Act in determining and ordering a defendant's release from previously ordered pretrial detention at a subsequent appearance. Section 110-6.1(i-5) addresses proceedings that occur after the trial court has issued a pretrial detention order pursuant to section 110-6.1(a) and (h) of the Code, which occurred here. *Id*. § 110-6.1(a), (h), (i-5). Section 110-6.1(i-5) states that "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id*. § 110-6.1(i-5) (West

2022). Thus, whether on motion of a party, on the court's own motion, or merely on subsequent appearance of a defendant in court, a trial court must conduct some review of the appropriateness of a defendant's continued detention each time a defendant appears. *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13; *People v. Long*, 2023 IL App (5th) 230881, ¶¶ 18-19; *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 29. At each such appearance or hearing, a court ordering continued pretrial detention must make certain findings based on specific, articulable facts, just as at an initial detention hearing. *Id*. However, subsequent determinations are not subject to every statutory requirement that applies to initial detention hearings. See *Casey*, 2024 IL App (3d) 230568, ¶ 13 ("the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing").

¶ 38    In *Stokes*, the defendant appealed from a trial court order for continued pretrial detention following a subsequent appearance under section 110-6.1(i-5) of the Code. Prior to the subsequent appearance, the State had not filed a new verified petition and defendant had not filed a specific motion regarding his continued detention. *Stokes*, 2024 IL App (1st) 232022-U, ¶ 28. Thus, the court needed only to review the defendant's detention and determine whether it should be continued in accordance with section 110-6.1(i-5). *Id*. The defendant made a subsequent appearance at the hearing immediately after his codefendant, who was charged under the same operative facts. *Id*. The court provided a summary statement as to the allegations against both defendants, which the court stated were the "same allegations" as related to both, "followed by equally summary statements regarding danger to the community, the alleged offense, and the order of continued detention." *Id*.

¶ 39    The *Stokes* court found that "the State's burden is not extinguished after the court's initial order of pretrial detention; rather, it remains the State's burden throughout the progression of the

defendant's case to demonstrate that detention continues to be necessary." *Id.* ¶ 29. The court continued, "[i]n order for that burden to be satisfied, even in subsequent reviews for continued pretrial detention, there must be specific and articulable facts pertaining to the defendant before the court that would support continued detention." *Id.* That conclusion was bolstered by the requirement in section 110-6.1(i-5) that continued detention be based on the specific articulable facts of the defendant's case. *Id.*

¶ 40    The reviewing court found that "at subsequent appearances after denial of pretrial release, the State must set forth a factual basis to support continued detention and the court must base its findings on the specific articulable facts of the case." *Id.* The State failed to provide the necessary specific and articulable facts supporting the defendant's continued detention and, therefore, "the review and order of defendant's continued detention was not in accordance with the Code." *Id.* ¶ 32.

¶ 41    The *Stokes* court, however, also noted that "only where a verified petition to deny pretrial release is before the court does the Code mandate a comprehensive pretrial hearing." *Id.* ¶ 36. While the State must in some way provide a factual basis for continued detention, the State is not required by section 110-6.1(i-5) to repeatedly prove by clear and convincing evidence at subsequent appearances that (1) the proof is evident or presumption great that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. See *Casey*, 2024 IL App (3d) 230568, ¶ 13. Accordingly, in subsequent appearances following a detention hearing on the State's verified petition to deny pretrial release, section 110-6.1(i-5) merely requires the trial court to find that " 'continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the

specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution.' " *Id.* (quoting 725 ILCS 5/110-6.1(i-5) (West 2022)). In addition, a new detention order need not be entered with each continued detention finding. *Id.* ¶ 38; see also *People v. Shaw*, 2024 IL App (1st) 232021-U, ¶¶ 39-40 (Tailor, J., dissenting). Of course, a trial court is not obligated to make the same findings as those made at a prior detention hearing. See *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 27.

¶ 42    Thus, while the trial court herein was required to make a finding at the January 24 subsequent appearance as to whether defendant's continued detention was "necessary to avoid a real and present threat" under section 110-6.1(i-5), we need not consider whether the State proved each of the three propositions under section 110-6.1(e) by clear and convincing evidence. Instead, we consider only whether the trial court abused its discretion in granting defendant pretrial release on reassessment after it had previously determined pretrial detention was necessary. 725 ILCS 5/110-6.1(i-5) (West 2022). *Stokes* and other cases addressing section 110-6.1(i-5) all involved the defendants' appeals of trial court determinations on subsequent appearances resulting in continued pretrial detention. See, *e.g.*, *Stokes*, 2024 IL App (1st) 232022-U, ¶ 28; *Casey*, 2024 IL App (3d) 230568, ¶¶ 8-9; *Hongo*, 2024 IL App (1st) 232482, ¶ 13; *Long*, 2023 IL App (5th) 230881, ¶ 11; *People v. Alcantara*, 2024 IL App (5th) 240195-U, ¶ 15; *Shaw*, 2024 IL App (1st) 232021-U, ¶ 12; *People v. Davis*, 2024 IL App (3d) 240049-U, ¶ 2. However, in the instant case, the State appeals a ruling that a defendant should be released from pretrial detention. The Act treats a trial court's determination to release a defendant differently from a determination to detain.

¶ 43    Section 110-5 of the Code governs determinations of "the amount of bail and conditions of release." 725 ILCS 5/110-5 (West 2022). Our review requires this court to interpret section 110-5 of the Code. "The primary objective of statutory construction is to ascertain and give effect to

the legislature's intent," which is most reliably indicated by the "plain and ordinary" language of the statute. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 44    Section 110-5(a) states as follows:

"In determining which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release, the court shall, on the basis of available information, take into account such matters as:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, [ ] criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;

(4) the nature or seriousness of the real and present threat to the safety of any person or persons in the community, based on the specific articulable facts of

the case, that would be posed by the defendant's release, if applicable, as required under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act;

> (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release if applicable ***. 725 ILCS 5/110-5(a) (West 2022).[2]

¶ 45    Section 4, paragraph (7.5) of the Rights of Crime Victims and Witnesses Act states that crime victims have "[t]he right to have the safety of the victim and the victim's family considered in determining whether to release the defendant and setting conditions of release after arrest and conviction." 725 ILCS 120/4(a)(7.5) (West 2022). While a trial court may at any time after motion by either party or on its own motion, remove previously set conditions of pretrial release, a court "shall not remove a previously set condition of pretrial release regulating contact with a victim or witness in the case, unless the subject of the condition has been given notice of the hearing." *Id.* § 110-6(g).[3]

---

[2]Additional considerations are listed for cases involving offenses not charged in the instant case. 725 ILCS 5/110-5(a)(6), (7) (West 2022).

[3]A trial court may only add or increase conditions of pretrial release in conformance with the section of the Act relating to revocation and modification of release. *Id.* § 110-6(g). The record does not reflect that Kluber was given notice of this hearing; however, the Act only requires such notice when a "no contact" provision is removed, not when release is ordered. See 725 ILCS 5/110-6(g). The court here actually added conditions, requiring defendant to not only refrain from contact with Kluber but to stay away from his address, in addition to ordering defendant to reside

¶ 46    Section 110-5(b) of the Code states that:

"The court may use a regularly validated risk assessment tool to aid its determination of appropriate conditions of release as provided under Section 110-6.4. If a risk assessment tool is used, the defendant's counsel shall be provided with the information and scoring system of the risk assessment tool used to arrive at the determination. The defendant retains the right to challenge the validity of the risk assessment tool used by the court and to present evidence relevant to the defendant's challenge." 725 ILCS 5/110-5(b) (West 2022).

¶ 47    Next, section 110-5(c) provides:

"The court shall impose any conditions that are mandatory under subsection (a) of Section 110-10. The court may impose any conditions that are permissible under subsection (b) of Section 110-10. The conditions of release imposed shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community." *Id*. § 110-5(c).

¶ 48    Finally, section 110-5(h) states that "[i]f the court imposes electronic monitoring, GPS monitoring, or home confinement, the court shall set forth in the record the basis for its finding." *Id*. § 110-5(h).

¶ 49    The plain and ordinary language of section 110-5(a) of the Code requires the trial court to determine "which conditions of pretrial release, *if any*, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community *and* the likelihood of

---

with his mother, follow EHM rules, and submit to random urine testing for alcohol.

compliance by the defendant with all the conditions of pretrial release" by taking into account various "matters" based on "available information." (Emphases added.) 725 ILCS 5/110-5(a) (West 2022). Thus, whether at an initial pretrial detention hearing or at a subsequent appearance, a court may determine that no conditions will reasonably ensure one or more of the three considerations listed (appearance, safety, and compliance). If a court makes such a determination and orders detention, it must make findings consistent with section 110-6.1(h)(1). *Id*. § 110-6(h)(1). However, if a court determines that a defendant should be released, no written findings are required. Section 110-5(a) provides only that a court determining pretrial release conditions "take into account such matters as" those delineated in subsection (a). *Id*. § 110-5(a)(1)-(7). Contrast this release determination standard with that for a detention order, in which the court shall "make a written finding summarizing the court's reasons *** based on the specific articulable facts of the case." *Id*. § 110-6.1(h)(1).

¶ 50    Clearly, the Act requires greater specificity in a trial court's factual findings to support a determination to detain than for one to release. However, even when a court determines that a defendant should be released before trial, the pretrial conditions of release must comply with the Code. For example, if a court releases a defendant on electronic monitoring, GPS monitoring, or home confinement, such conditions can only be imposed when "no less restrictive condition of release or combination of less restrictive condition[s] of release would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm." *Id*. § 110-5(g). To justify its decision in such instances, the court must "set forth in the record the basis for its finding." *Id*. § 110-5(h). With these statutory considerations in mind, we turn to the trial court's decision to release defendant from continued pretrial detention in this case. *Id*. § 110-6.1(i-5).

¶ 51     Here, the record shows that at defendant's subsequent appearance on January 24, 2024, the trial court conducted a detention review pursuant to section 110-6.1(i-5). *Id.* During this hearing, the court allowed the parties to present new evidence and argument regarding the need for continued pretrial detention. The court considered and denied the State's objection to the continued detention review, finding that to deny defendant "the right to proceed, especially if there is new information, would have a chilling effect on our ability to file an appeal in the first place," and was not "the intent of the legislature with respect to the Pretrial Fairness Act." The court considered the bases for the prior judge's January 2, 2024 decision to grant the State's petition to deny defendant's pretrial release when it found at a subsequent appearance on January 17, 2024 "that it is still necessary to hold the defendant in detention." *Id.* The court specifically stated that it reviewed the file from the original hearing on January 2, 2024. Accordingly, the court was aware of whether defendant's pretrial release posed a real and present threat to the safety of any person or persons in the community, based on the specific articulable facts of the case pursuant to section 110-6.1(a)(1.5), (g). *Id.* § 110-6.1(a)(1.5), (g).

¶ 52     Further, the trial court heard defendant's proffer of the Metra ticket as reliable evidence and implicitly found that it supported defendant's argument that he was the person who purchased the ticket and rode the train at the time the offense was committed. The court also considered defendant's proffer of body camera footage from the responding police officers, a supplemental police report, and a videotaped interview of defendant following the offense. In addition, the court considered the State's new proffer of evidence to establish that Kluber recognized and properly identified defendant as the perpetrator.

¶ 53     In opposition, the State proffered that (1) Kluber had previously hired defendant to cut his lawn and (2) defendant had recently visited Kluber's home for a gathering, during which he had

also stolen a bottle of alcohol. The State argued that nothing had changed since the trial court's initial decision to grant its petition to deny defendant pretrial release. The State contended that defendant continued to pose a real and present threat to Kluber and the community, and that no condition or conditions could mitigate that threat. The State also pointed out defendant's lengthy criminal history, arguing that he was unable to conform to the laws of the State, considering the 24 pending charges against him. The State argued that because defendant was unhoused, it could not place him on EHM and, therefore, could not mitigate the real and present threat defendant posed to Kluber or the community. Finally, the State also proffered portions of defendant's videotaped interview, in which he threatened, "[i]f I go to jail or prison, his ass [is] dead."

¶ 54 We are unable to discern, on this record, whether and to what extent the trial court took into account the matters listed in section 110-5(a) of the Code when deciding to grant defendant pretrial release. In its cursory oral ruling, the court apparently placed great weight on defendant's presentation of alibi evidence, particularly the Metra ticket and argument concerning the identification of defendant by name. The court stated that this supported a conclusion that defendant was not a danger to Kluber, but the existence of alibi evidence would go to "the weight of the evidence against the defendant" (725 ILCS 5/110-5(a)(2) (West 2022)), not to "the nature and seriousness of the real and present threat" under section 110-5(a)(4) (725 ILCS 5/110-5(a)(4) (West 2022)). Further, the court did not articulate any information relevant to subsection 3, concerning the history and characteristics of defendant, including various aspects of his physical, mental and financial condition, as well as criminal history and whether he was on release for any offense. *Id.* § 110-5(a)(3). Defendant also had a lengthy criminal history, but the majority of his cases involved trespass to land, which the court arguably could have found was attendant to defendant's unhoused living condition. However, the record contains none of the court's

observations or conclusions on this set of matters that "shall" be taken into account. *Id*. § 110-5(a). As for subsection 4, the court's emphasis on the alibi evidence may have reflected its skeptical view of "the nature and seriousness of the real and present threat to the safety" of Kluber. *Id*. § 110-5(a)(4). Finally, the record does not show whether the court considered defendant's validated risk assessment under section 110-5(b) of the Code, which indicates that he is at the highest risk level of "new criminal activity," and nearly the highest risk level for "failure to appear" in court for future hearings. *Id*. §§ 110-5(b), 110-6.4.

¶ 55    We hold that when determining pretrial release of a defendant, the trial court must provide a record of its findings, articulating how it took into account matters delineated in section 110-5(a) of the Code. *Id*. § 110-5(a). Here, the trial court did not explain on the record how it took into account matters in which it determined the conditions of defendant's pretrial release pursuant to section 110-5(a). *Id*.

¶ 56    We also find that the trial court did not comply with section 110-5(h) of the Code, which specifically requires the court to "set forth in the record the basis for its finding" to impose EHM. *Id*. § 110-5(h). For these reasons, we must vacate the trial court's January 24, 2024 order granting defendant pretrial release with maximum conditions under EHM and remand for compliance with section 110-5(h) of the Code, which requires the court to set forth the basis for its finding to impose EHM. *Id*.

¶ 57    As a final note, we express no opinion as to the correctness of Judge Kliment's ruling of pretrial release following a subsequent appearance under section 110-6.1(i-5) of the Code. We hold only that the trial court failed to articulate on the record what available information it took into account when granting defendant pretrial release under section 110-5(a) and failed to comply with the statutory requirement to set forth the basis of its finding to impose EHM pursuant to

section 110-5(h). *Id.* § 110-5(a), (h). In the interim, defendant shall remain on pretrial release with conditions as set forth in the trial court's January 24, 2024 order.

¶ 58                              III. CONCLUSION

¶ 59    For the reasons stated, we vacate the order of the circuit court of Kane County, and the cause is remanded for the court to comply with the Code when granting pretrial release and imposing electronic home monitoring as a condition of release. *Id.* §§ 110-5(a), (h), 6.1(i-5).

¶ 60    Order vacated; cause remanded.