2024 IL App (2d) 240126-U
No. 2-24-0126
Order filed May 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-188 |
| KENYATTA L. TRIPLETT, JR., | ) ) ) | Honorable Theodore S. Potkonjak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying the defendant pretrial release.

¶ 2    The defendant, Kenyatta L. Triplett, Jr., appeals from the trial court's order granting the State's petition to deny him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes informally called the Pretrial Fairness Act (Act).  See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A. 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The road to the charge that forms the basis for the defendant's current pretrial detention is more roundabout than usual.  The following facts are drawn from the State's proffer in this case, its motion for discovery, and the record in a prior pretrial detention case involving the defendant.

¶ 5      On February 6, 2023, the car that the defendant was driving was pulled over for a license plate violation.  At the time, the defendant was on probation on a McLean County charge of possession of a controlled substance.  The defendant remained in the car, but two men jumped out and ran.  Police gave chase and found two guns, which they sent to the crime lab for testing.  The defendant was not arrested and no charges were filed at that time.

¶ 6      Eleven days later, on February 17, 2023, four men arrived at a barbershop in Waukegan, waited until the victim emerged, and then fired at least 56 rounds at him.  The victim survived. The defendant was eventually charged with attempted murder (720 ILCS 5/9-1(a)(1) (West 2022)), a Class X felony, and aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), a Class 1 felony, in connection with this shooting.

¶ 7      The defendant was arrested on those charges on April 18, 2023.  His conduct during the arrest led to an additional charge of fleeing and eluding a police officer, a Class A misdemeanor. At arraignment, his bail was set at $1 million.  He was eventually able to post bond and was released on June 30, 2023.

¶ 8      The defendant remained out on bond until September 20, 2023, when the trial court ordered him detained on a petition for pretrial detention under the Act that had been filed by the State in August.  The defendant appealed the pretrial detention order.

¶ 9      On January 10, 2024, the crime lab issued a report on the guns found after the defendant's passengers fled the traffic stop in February 2023.  One of the guns was a Glock 21 Gen .45 handgun

with an extended clip and a device that made it fully automatic. The forensic report stated that a search of CODIS had found an association between DNA swabbed from the grip of that gun and a DNA profile of the defendant. The report also stated that "[t]his association is not confirmed without further comparison analysis" and that a DNA sample from the defendant would be necessary to confirm the association.

¶ 10 On January 17, 2024, we reversed the defendant's pretrial detention, finding that the State's August 2023 petition for pretrial detention was untimely. *People v. Tripplett*, 2024 IL App (2d) 230388. Pursuant to our reversal, the defendant was released.

¶ 11 On January 25, the State charged the defendant with unauthorized use of a weapon, specifically, with possessing the Glock within the passenger compartment of a vehicle (*id*. § 24-1(a)(7)(i)). When the defendant learned of the charge, he voluntarily surrendered to the police.

¶ 12 The State filed a petition to detain the defendant. 725 ILCS 5/110-6.1 (West 2022). The State alleged that there was probable cause to show that the defendant committed the alleged offenses and that his pretrial release posed a real and present threat to the safety of any person or persons or the community. The State noted that after the charged offense occurred, the defendant had been charged with attempted murder and aggravated battery in connection with the Waukegan shooting. Further, the two offenses both involved firearms, indicating that the defendant posed a threat to the community. The State argued that no set of conditions could mitigate this threat because electronic monitoring could not "confine the Defendant to his home with certainty."

¶ 13 The defendant opposed pretrial detention. First, he argued that there was not clear and convincing evidence that he committed the present weapons offense. The Glock was presumed to have been discarded by one of the passengers who fled, and he had denied to police that the gun was his. The DNA report showed an "association," not a confirmed match. Further, he had never

been convicted and had never provided a DNA sample, and thus it was unclear how there could be any association with his DNA in CODIS.

¶ 14     He also argued that the State had not shown that he posed a risk to the community. Prior to the traffic stop that led to the current charge, the defendant had little criminal history and no convictions, merely a drug offense for which he received probation. As for the charges from the shooting, the defendant had remained out on bond for two and a half months, and during that time he had appeared for court as ordered and had not reoffended. The defendant argued that these last facts showed that he could be released with conditions, and he would not reoffend and would continue to appear for court.

¶ 15     At the hearing on the State's petition, the State tendered the charging document, the defendant's pretrial services report, and a photograph of the Glock showing the extended clip. After hearing the parties' arguments, the trial court granted the State's petition for pretrial detention.

¶ 16     The trial court found that the State had presented clear and convincing evidence that the defendant had committed the charged offense. The gun appeared to have been discarded by one of the passengers in the defendant's car, indicating that it had been in the car with the defendant. Further, the crime lab tested the grip of the gun and "got a hit" for the defendant's DNA. The trial court noted that "down the line" the defendant might be able to raise a reasonable doubt about when or even whether he had held the Glock and whether he "possessed" it on the date charged, but that was not the standard confronting the court during the pretrial detention hearing.

¶ 17     As for whether the defendant posed a threat to the safety of the community, the trial court focused on the charges currently faced by the defendant, which included not only the weapons charge in this case but also the charges of attempted murder and aggravated battery, and the fleeing

and eluding charge. The trial court also noted that he had been on probation for the McLean County drug charge when he committed the current offense. Both of the February 2023 incidents involved guns, and both were Class X felonies. Further, the McLean County drug charge was a felony. Based on the defendant's criminal history and the characteristics of the charged offenses, the trial court found that the defendant was "inherently dangerous to the community." Without elaborating on its reasoning, the trial court also found that there were no conditions that could mitigate the threat posed by the defendant.

¶ 18    The defendant filed a timely notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20    On appeal, the defendant repeats the arguments he raised below. First, he argues that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he committed the charged offense, *i.e.*, that he possessed the Glock. Second, he argues that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific and articulable facts of the case. Finally, he argues that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate the real and present threat to the victim or the community.

¶ 21    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 22    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).  "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***."  *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 23    We review the court's decision to deny pretrial release under a bifurcated standard.  *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks.  *Id.*  A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented.  *Id.*  We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release.  *Id.*  An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  *Id.*

¶ 24    The defendant first argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the charged offenses.  However, the State offered evidence supporting the conclusion that the Glock had been in the passenger compartment of the defendant's car, as it was found as police searched for the two passengers who fled.  Further, there was DNA evidence that the defendant had held the Glock, as DNA associated with him was on the grip.  The trial court's determination that there was clear and

convincing evidence that the defendant possessed the gun was not against the manifest weight of the evidence.

¶ 25    The defendant argues that the evidence was insufficient because the DNA was only an "association" and the origin of that association was unclear, given that he had never provided a DNA sample to the State. These arguments lack merit. First, although the term "association" may seem vague, it refers to a genetic match between two or more DNA profiles in the Combined DNA Index System or CODIS. In Illinois, after such a match is identified, comparison from a known sample of the accused's DNA is routinely requested. That comparison may either confirm the match or exonerate the accused. Second, the defendant's DNA profile could be in CODIS even if he had not knowingly provided a sample. CODIS is a database of genetic information maintained by the Federal Bureau of Investigation. In addition to DNA samples provided by convicted offenders, it may also contain DNA from crime scene evidence, unidentified remains, missing persons, and potential relatives. Thus, the defendant's contention that he had not knowingly provided DNA does not refute the association found by CODIS.

¶ 26    The defendant also argues that, even if he had held the Glock at some point, there was no evidence about when or how that occurred. However, as the trial court noted, such arguments are better suited for trial. The evidence required at a detention hearing is less than required at trial. *People v. Luna*, 2024 IL App (2d) 230568, ¶ 9. Further, if in the future the State is able to obtain a DNA sample from the defendant (as requested) and it does *not* confirm his connection to the Glock, the defendant can renew his request for pretrial release.

¶ 27    The defendant next argues that the State failed to show, by clear and convincing evidence, that he poses a real and present threat to the safety of any person or persons or the community. It is true that the defendant did not reoffend during the two and a half months of his pretrial release

last summer.  However, section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022)) also permits the trial court to consider the nature and circumstances of the charges facing the defendant, his criminal history, and whether he was on probation at the time of the offense(s) in determining whether his pretrial release would pose a threat to the safety of the community.  Thus, the trial court did not err in considering that (a) both of the incidents that led to most serious charges currently facing the defendant involve firearms and (b) that the defendant was on probation at the time he committed both offenses.  We cannot say that, on balance, the trial court abused its discretion in determining that the defendant presents a real and present threat to the community.

¶ 28    Finally, the defendant argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat he posed to the victim.  Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release."  725 ILCS 5/110-5(a)(1)-(6) (West 2022).  In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the threat the defendant poses to any person or the community.  *Id.*

¶ 29    In determining that no conditions of release could mitigate the threat the defendant posed to the victim, the trial court considered all of these.  The trial court also considered that the defendant was alleged to have committed serious offenses involving firearms while on probation. The trial court's finding that no conditions could mitigate the threat posed by the defendant's release was not against the manifest weight of the evidence.

¶ 30                                   III. CONCLUSION

¶ 31     For the reasons stated, we affirm the judgment of the circuit court of Lake County.[1]

¶ 32     Affirmed.

---

[1]We apply the newly amended Illinois Supreme Court Rule 604(h)(8), which allows a disposition to be filed 100 days from the date the appellant filed the notice of appeal. Ill. S. Ct. R. 604(h)(8) (eff. Apr. 15, 2024), as the amendment to Rule 604(h)(8) is procedural in nature. See *People v. Harris*, 2024 IL App (2d) 240070, ¶ 1 n.1.